On behalf of the Petitioner-Appellant Robert Burlew, I'm intending to preserve about two minutes for rebuttal. That's fine. Just keep an eye on the clock there. It's counting down. There's only one issue in this appeal, and our argument is that the State Court's decision that Robert Burlew was not in custody for the purposes of Miranda when he was locked in a patrol car for 30 to 45 minutes and then questioned about items that were found in his car and asked whether they were stolen is an unreasonable application of the Miranda rule about custodial interrogation. The standard is whether someone is taken into custody or otherwise deprived of his freedom of action in a significant way. That's the language of Miranda itself. Subsequent cases like this. And it's an objective inquiry, correct? It's an objective inquiry as to whether a reasonable person in Mr. Burlew's shoes under all the circumstances would believe that he's in custody. And I think under the circumstances here, he clearly was in custody, and the Court's decision to the contrary was an unreasonable application to Miranda. He was stopped on a desolate road late at night for overshooting a turn. The officer came by, asked for his identification. When he pulled the license, he found out he was on probation. He asked Mr. Burlew to step out of the vehicle. When he did a pat-down search, he found a woman's jewelry box in his shirt pocket. He asked about that. He asked Ms. Burlew to step out of the vehicle. He was asked to step out of the vehicle. Mr. Burlew said it was because it had slid across the dashboard. He then put Mr. Burlew back in the patrol car, which was locked. And he asked his partner in the car, Georgina Rebich, whether that was her jewelry. She said no. And then did a thorough search of the vehicle. And he explained that to the defendant, correct? He explained, it's come back, you're on parole, I'm going to do a parole search of the car. Probation, but yes. Probation, and please have a seat in the back of my patrol car until I complete that. Yes. All right. Now, I looked at the record. I didn't see any reference to whether your client knew that the police car was locked from the inside or not locked from the inside. And it's alleged, but I didn't see it in the testimony in the record. He didn't testify at the suppression hearing. Right. And there was no indication that there was no evidence of that one way or the other. I think it's reasonable to infer that when you're in the back of the patrol car for that extended period of time that it was locked. The other thing that I think is significant. You make a significant point out of it, and that's why I went and looked at it, and I didn't see it one way or the other. And the officer obviously was opening up the car door and talking with your client on multiple occasions while he continued this investigation, and the door was open during those periods, correct? When he would open the door and talk to him, and then he would close the door. Yeah, close the door. The other officer, there was two uniformed armed officers. The other officer, the testimony was, stood outside the patrol car by the front passenger side door. So. Guns were not drawn, though, right? Guns were not drawn. Okay. And the argument is that at the point when the officer came back, determined the items were, found all these items that were suspicious, asked him once about the items. He said they weren't his, that they were given by two other people. And the officer shut the door again, went back, and called that information about the woman and found out that she said she had been burglarized. When he came back at that point, the state court determined it was between 30 and 45 minutes. So he's in the back of the patrol car alone with another officer outside of it, and then he's asked about whether the items were stolen, whether he knew they were stolen. At that point, I think it's beyond reason to think that he was not in custody and there wasn't going to be an arrest. He's in the back of the patrol car, 30 to 45 minutes. The patrol car was locked. Another officer was standing out there, and they questioned him specifically about items that were stolen and that the officer knew he was on probation for a theft-related offense. There's three Ninth Circuit cases cited in the briefs that I think are all somewhat analogous. They've all found that they're custody when someone was in the back of a patrol car. What difference does it make that he was, as Judge O'Grady pointed out, that he was he knew he was subject to a probation search requirement? I think it strengthens our argument. Why? Because if you know you're on probation for a theft-related offense and they find items in your car and you're asked about being stolen, it's more likely that you are going to be arrested at that point rather than less likely. Well, they told him they were going to search the car pursuant to the probation requirement, correct? Right. And they searched the car and then came back and asked him about the items, but they didn't accept his answer, closed the car door, and then he was able to see the officer on the phone, and it was another extended period, about 15 more minutes. And after that period, then he came back and asked him if he knew the items were stolen. So it wasn't just for the probation search. That would have taken 10, 15 minutes the first time. And they came back to him, asked him about the items. After he said they weren't his, then they went back and did call the woman who said she was burglarized, and then they came back to him. And that's when we're arguing after the 30 to 45 minutes in the back of the patrol car, when he specifically becomes the focus of the investigation, and they ask him whether the items were stolen, at that point he was going to be arrested. And today, again, he does that in test cases either in the premises or outside,      they'll take him if they didn't have options later on, and he goes. Let me ask you this. I think the officers also told him that when they put him in the back seat of the car that he was not under arrest.  Now, two points on that. They told him he was not under arrest, but they also did not tell him that he was free to leave. And second, my second point that I think is significant is that they told him that right in the beginning when he was brought into the car and they said they were going to go out to do a probation search. That's much different than 30 to 45 minutes later after they search the vehicle, after they find items that are suspicious, after they find cash checks in the name of Shirley Forcing, after Shirley Forcing says her home was burglarized, and after they go back and tell him that the items are – you know the items are stolen. Even if he was told initially that he was not under arrest, by that point, he was under arrest. And I – Kagan. Why isn't that further investigation? Why isn't this different than the gun cases that you cited? Because they still have to tie the evidence in the back of the trunk. And if he says, no, that's not my stuff, I have no idea what's in there, I was helping move it for a friend, then what – that answer may have changed the whole dynamics, correct? Well, once they asked – I can't imagine they would not have arrested him even if he would have said no. Because he actually didn't – he didn't say he knew they were stolen. He just said they possibly were stolen and he got them from two other people. He showed knowledge. They gave him a lukewarm answer and then they arrested him. They were just going to ask him either way and they were going to arrest him either way. I think that's the most reasonable understanding of what a reasonable person would have assumed under those circumstances. In light of the other evidence, just assuming you're right on this issue, how about harmless error? I think there can't be a harmless error finding in this case. And a few responses. First of all, the state court did not find harmless error, so there's no deference due to any kind of a finding there. Second, they acquitted him on burglary charge, convicted him only on receiving stolen property. Third, the prosecutor relied very heavily on his statement. He said it in opening statement, he brought it out of the officer's testimony, and he repeated it five times during the closing argument, which I've cited in my brief. And there was evidence presented to other witnesses that two other people brought the items to a woman's home before they were placed in his vehicle. So there can't be any kind of harmless error in this case. I will defer. Okay. I'll give you a minute for rebuttal. Thank you very much. Good morning, Your Honors, and may it please the Court. I'm Mark Johnson from the California Attorney General's Office, appearing on behalf of Appelli. As the Court is aware, this is an ADPA case, and the only issue here is whether the state court's denial of the Miranda claim was at the very least a reasonable application of Miranda. And I submit that under that highly deferential ADPA standard, there can be no question that the state court's resolution of this case was reasonable. And for simply a couple of the factors alone that the Court's already mentioned, this defendant knew he had been stopped for a traffic stop. He knew he was on searchable probation. The police told him that he was going to be searched pursuant to that probation term. They placed him in the back of the car for officer safety, but they did tell him he was not under arrest. You know, with that searchable provision in his terms and conditions of his probation, how much leeway does that give the officers? They said they were going to search the car. They searched the car, and they came back, and they asked him some questions, and they went on and made a further investigation, keeping him in the back of the car, closing the door. And as the counsel stresses, it was about another 30 minutes. I don't know. I'm not sure where this 45-minute figure comes up, but I'll take him at his word that the detention may have occurred for as long as 45 minutes. But all of this period was taken up as part of the search of the car pursuant to the probationary search. That probationary search turned up items that were suspicious that needed to be looked into. Well, they went back to him, and they asked, whose stuff is this? And apparently they didn't believe what he told them. Is that right? They looked into it further. I don't know. What they subjectively believe at that point under Miranda is not important. No, but, well, apparently they asked him a question. He gave them a response, and they went and called somebody. Yes. Correct? That's my understanding of the record. And he remained in the backseat of the car while they pursued further investigation. And at no time was he handcuffed. At no time was he told he was under arrest. He was told he was not under arrest. Well, I mean, if they closed the door and it's locked, wouldn't a reasonable person think that they're not free to leave? Well, Your Honor, here's the point on this. I mean, really. Be honest. This is a – not a person who's under the terms of the court. A reasonable person, whether you're under a search warrant or not, I mean, a reasonable person stuck in the back of a police car, the door is slammed, and it locks. Would you think you're free to leave? Would that person think he's free to leave, he or she's free to leave? That – well, the person is being detained pursuant to the terms of their probation. That's not the same thing as being under arrest. So for you, what makes it – what sort of makes this all proper or not an unreasonable application of Miranda is the fact that he knew that he was subject to a search. That's right. So if he weren't subject to a search, that's the whole thing for you. If he had not been subject to a search, just an average motorist, this happens to, you would then say it was an unreasonable application? No, I wouldn't say that. That's a different point. Well, then why is it so – why is this so critical here, then? Well, it's – it's the primary factors showing that the State courts, even in this case, even if we weren't under ADPA, the State court made the right call here. But the question is, you know, you and I can disagree as to whether or not this may have been Miranda, may or not have been a Miranda violation. But the only real question here is whether, you know, any fair-minded jurist could have agreed with the California court that there was no Miranda violation here. And under these circumstances, I can't see any basis for disputing that. How do you distinguish the Henley and Chamberlain cases in which the very similar situation of being held in the – in the car for 20 minutes or more? Well, I distinguish those cases first on the primary basis that – I actually have two responses to that, Your Honor. The first response to that is that there was a detention there, but the detention here was different. The detention here was one that the – that Burlew had already signed on to by virtue of accepting the terms of his probation. That's the first response to that. And the second response, and I don't want to be evasive, but those cases are not United States Supreme Court cases, and so they can't establish – Excuse me. Let me interrupt for a second. You say that it's a difference that he was on probation. What difference does that make? That means that his detention was – was authorized to the point that the officers felt investigation was necessary in light of their observations. And as I was – He was authorized. He still was in custody, was he not? He was being detained, but he wasn't under arrest. And that's the question under Miranda. You know, it was – it was the functional equivalent of an arrest. And the defendant here knew he wasn't being arrested. He knew he was subject to – You just – you just made an interesting point on that. It's the functional equivalent of an arrest. But you don't have to be under arrest in order to be in custody, do you? You have to be – you have to be in custody to the point that it's the functional equivalent of an arrest. And it is – and if this is true, this guy already signed on to being detained as a – as a term of his probation. If a detention and a detention alone constitutes custody sufficient for an arrest, then Miranda is required in a way that the Supreme Court has never before authorized. Well, suppose that he, in fact, did know that he was being detained there in the car and still was not given a Miranda warning. Isn't the fact that he was in custody and should have been given a Miranda warning regardless of why he was in custody? Only if the custody – again, only if the custody amounted to the functional equivalent of an arrest. Well, that's the key, isn't it? That is. And what I've said to you is that it isn't an arrest. It's the functional equivalent to an arrest. Well, Your Honor, respectfully, the key really here is whether the State court's determination as to that point was at least reasonable. And under this factual scenario, I think it has to be considered reasonable. And, again, as recently elucidated by the Supreme Court, the question in that regard is whether any fair-minded jurist could have agreed with the State court's determination. And every court to look at it so far has, if there's nothing else. I didn't understand that. Every court has looked at it so far. Pardon me? We lost something in the transmission. Yeah. You say every court that has looked at this so far has ruled as you would have us rule. They have looked at what? Two different State superior court judges ruled on this Miranda claim. The third district court of appeal ruled on this Miranda claim. California's Supreme Court did, as well as the district court did. All of them found no Miranda violation. Maybe they just didn't see it, you know, the right way. Well, but so long as any fair-minded juror, and I know I sound like a broken record here. Yeah, you do, because, you know, just what you're saying is just because the lower court, a district judge, for example, has not found it unreasonable that that means that there's a, that, you know, we've got to exceed or recognize that some other judge might disagree. Well, you'd have to say that all of those lower courts were in some sense operating under fundamental legal error, weren't fair-minded, and that the resolution of this was just such an unreasonable application to Miranda that, you know, that no fair-minded jurors could go along with it. Whether we disagree about it amongst ourselves is not the question. Suppose he had been placed in handcuffs. Would that change your position at all? Actually, no, not under these facts, but that's not the question. So you get arrested, you get all of this, and you put him in handcuffs, put him in the back seat, close the door, and in your view, reasonable motors in that situation would not think they're freed, would not think they're free? Again, my view is not pertinent here. I'm talking about a reasonable, I'm talking about a reasonable. Well, if you're asking me, no, not under, because I think even if handcuffs were involved here, that would have been a reasonable measure for an officer of security to conduct this probationary search that the defendant had agreed to submit to. So we're back to the fact that he was on probation and he was subject to probation. And he wasn't interrogated. This is conversational tones here. No weapons were ever drawn. He wasn't handcuffed. Okay. I have nothing further. Okay. Thank you. I don't really have anything to add. I'd just point out that it's at Excerpt of Record, page 91, that he was detained for 30 to 45 minutes. That's what the State court judge found. Is that the total time that he was in the car? That's the time when they asked him the final question, whether he knew that property was stolen. From then until? From the time of the stop until the time, took about 30 to 45 minutes. Okay. Suppose that it is found that he was properly put in and restrained, in fact, in the car. Does that make any difference as to whether or not he could be examined in violation of Miranda? Even if the custody is proper? I think if I understand the question right, no. My answer would be no. Whether or not he was in the back of the patrol car properly in the first place, the question is whether he is in custody, whether he's restrained in a way  that he's not in custody. And I think after they find out that the property is stolen and they ask him whether it's stolen, after 30 to 45 minutes in the back of a patrol car, when the patrol car is locked and another officer is standing right outside of it, no one's going to feel like that they're not going to be arrested or that they're not in custody at that point. Okay. And didn't have to be arrested. Judge has another question. Well, it didn't have to be arrested or be told that he was arrested, did it? It was just that he was in custody and couldn't leave. Absolutely correct. There's actually a case law decision by this Court that says even if you're not told you're under arrest, even if you're told you're not under arrest, you could still be under arrest for purposes of. . . Or still be in custody, not under arrest. That's the point I'm trying to make. Right. That's a very good point. I'm sorry. I misspoke there. You could still be in custody for purposes of Miranda even if you're told you're not under arrest. Yes. Thank you. Counselor? I'm so happy not to have to be arguing procedural default, exhaustion or timeliness, like, you know, all these other habeas. Thank you. Thank you, counsel. Thank you, both counsel. We appreciate your arguments. The matter is submitted.
judges: O'grady, Hug, Paez